JUDGE NATHAN

**12 CIV 8212**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIAN M. INGUANZO,

                        Plaintiff,

-against-

HOUSING & SERVICES, INC., KRISTI KIMMERLE-
CILENTI, *Individually*, and DERRICK HORTON,
*Individually*,

                        Defendants.
------------------------------------------------------------X

Case No.

**COMPLAINT**

PLAINTIFF DEMANDS A TRIAL BY JURY

RECEIVED NOV 13 2012 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, MARIAN M. INGUANZO, by her attorneys, PHILLIPS & PHILLIPS, ATTORNEYS AT LAW, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendants violated <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") and the <u>New York City Human Rights Law, Administrative Code § 8-107</u> et seq. ("NYCHRL"), seeking to recover lost wages, emotional distress, punitive damages, reasonable attorneys' fees and costs as a result of being **discriminated and retaliated against** by her employer solely on the basis her **gender, race, and national origin**.

2. Specifically, Plaintiff's employer, Housing & Services, Inc., discriminated against Plaintiff by refusing to give her a promised raise, excluding her from training necessary for her to complete her job functions, and failing to promote her based on her gender, race, and national origin, and in retaliation for her continued complaints of such discrimination, terminated her

employment.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims of Plaintiff brought under city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based on substantial parts of the events or omissions giving rise to the claims occurring in the County of New York, State of New York, within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination and retaliation upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated August 17, 2012, with respect to the herein charges of discrimination and retaliation. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. Plaintiff MARIAN M. INGUANZO ("INGUANZO") is a resident of the State of New York and County of Bronx.

9. At all times material, Defendant HOUSING & SERVICES, INC. ("HSI"), located at 461 Park Avenue South, 6th Floor, New York, NY 10016, is a domestic non-for-profit

corporation duly existing pursuant and by virtue of the laws of the State of New York.

10. At all times material, Plaintiff INGUANZO was an employee of Defendant HSI at their Narragansett location, located at 2508 Broadway, New York, NY 10025.

11. At all times material, Defendant Kristi Kimmerle-Cilenti ("KIMMERLE") was and is a resident of the State of Jersey and an employee of Defendant HSI.

12. At all times material, Defendant KIMMERLE held the position of "Director of Programs" at Defendant HSI.

13. At all times material, Defendant KIMMERLE was Plaintiff INGUANZO's superior and/or had supervisory authority over Plaintiff INGUANZO.

14. At all times material, Defendant Derrick Horton ("HORTON") was and is a resident of the State of New Jersey and an employee of Defendant HSI.

15. At all times material, Defendant HORTON held the position of "Program Manager" at Defendant HSI.

16. At all times material, Defendant HORTON was Plaintiff INGUANZO's superior and/or had supervisory authority over Plaintiff INGUANZO.

17. At all times material, Defendant HSI and Defendants KIMMERLE and HORTON are collectively referred to herein as "Defendants."

## MATERIAL FACTS

18. On or about March 9, 2009, Plaintiff INGUANZO began working for Defendant HSI as a case manager for the Narragansett, a supportive housing program in New York City.

19. At that time, Plaintiff INGUANZO had over seventeen (17) years of experience in social work, as well as a Master's degree in social work.

20. In her position as case manager for the Narragansett, Plaintiff earned approximately $47,000 per year.

21. During her first three (3) months working for Defendant HSI, Plaintiff INGUANZO received positive performance reviews, commendations for her work, and overall praise from management.

22. However, despite this, Plaintiff INGUANZO never received the raise Edward Reardon, her supervisor and Program Manager, had promised her when she was hired.

23. In fact, Plaintiff INGUANZO, throughout her tenure with Defendant HSI, never once received a salary increase or increase of benefits.

24. Plaintiff INGUANZO's work performance was so highly regarded that shortly after she began her employment with Defendant HSI, Plaintiff INGUANZO was asked to temporarily perform all Program Manager responsibilities for her supervisor, Edward Reardon, who was on vacation from April 13, 2009 to April 22, 2009, in addition to her regular job responsibilities. In fact, Plaintiff INGUANZO retained many job responsibilities usually allocated to Program Managers after Edward Reardon's return from vacation and after he left Defendant HSI.

25. On or about June 3, 2009, Defendant KIMMERLE commended Plaintiff INGUANZO for her superior job performance. During the conversation, Plaintiff INGUANZO reminded Defendant KIMMERLE that she had not yet received her promised salary increase. In response, Defendant KIMMERLE told Plaintiff INGUANZO that Plaintiff INGUANZO would be the first in line to receive any such salary increase or promotion.

26. However, Plaintiff INGUANZO did not receive either a salary increase or promotion.

27. On or about March 5, 2010, Edward Reardon complimented Plaintiff INGUANZO's work

performance and further mentioned that with her excellent qualifications and skills, Plaintiff INGUANZO would be an asset at Defendant HSI's main office.

28. Although Plaintiff INGUANZO thrived in her working environment at Defendant HSI, she felt that she was being unfairly targeted and discriminated against based on her gender, race, and national origin.

29. By way of example, in or around late 2009, **Edward Reardon said to Plaintiff INGUANZO that management only promotes those they feel comfortable with in terms of race**, a key reason why there were no Hispanic women in management positions at Defendant HSI.

30. As such, around late 2009 and early 2010, Plaintiff INGUANZO began to complain to her supervisor Edward Reardon, both orally and in writing, about the discrimination she was enduring in the workplace.

31. Edward Reardon spoke with Defendant KIMMERLE on multiple occasions about Plaintiff INGUANZO's complaints of discrimination, however, upon information and belief Defendant KIMMERLE never investigated the complaints or attempted to rectify Plaintiff INGUANZO's work environment.

32. On or about April 28, 2010, after finding out about Plaintiff INGUANZO's complaint of discrimination based on gender, race, and national origin, Defendant KIMMERLE gave Plaintiff INGUANZO a written warning for purportedly violating a client's HIPAA rights and failing to follow up with such client at the hospital.

33. **However, no such infraction ever occurred. Defendant KIMMERLE had fabricated the story in retaliation for Plaintiff INGUANZO's complaints of discrimination.**

34. **Such unwarranted retaliatory behavior created undue stress and anxiety for Plaintiff**

**INGUANZO.**

35. Thereafter, in or around June 2010, Plaintiff INGUANZO was scheduled to receive an annual performance review, which performance review would potentially entitle her to a salary increase or promotion.

36. Although Plaintiff INGUANZO reminded Defendant KIMMERLE on several occasions between June 2010 and November 2010 that she had still not received an annual review, and therefore could not be considered for a salary increase or promotion, Defendant KIMMERLE refused to provide Plaintiff INGUANZO with a performance review.

37. Instead, Defendant KIMMERLE waited five (5) months to give Plaintiff INGUANZO her performance review, thereby inhibiting her from receiving a salary increase or promotion that year.

38. Upon information and belief, Plaintiff INGUANZO was the only case worker who did not receive her performance evaluation for five (5) months.

39. During this time, in or around July 2010, Plaintiff INGUANZO was asked again to take over all Program Manager duties temporarily from Edward Reardon who was unable to continue his full time employment with Defendant HSI due to terminal illness.

40. When Plaintiff INGUANZO asked to be considered for the Program Manager position permanently, Defendant KIMMERLE responded that such a position would have to be filled by someone with a Licensed Master Social Worker degree, which degree Plaintiff INGUANZO does not have. Defendant KIMMERLE further responded that she could not find any qualified Hispanic individuals to fill the Program Manager position.

41. On or about August 11, 2010, Plaintiff INGUANZO complained to Defendant KIMMERLE about the fabricated write-up from April as it was based on a discriminatory animus.

42. Up until November 15 when Derrick Horton was hired, Plaintiff INGUANZO was still performing the job duties of Program Manager. However, she was never compensated for performing these additional duties.

43. On or about November 10, 2010, when Defendant KIMMERLE finally provided Plaintiff INGUANZO with her performance review, Defendant KIMMERLE gave Plaintiff INGUANZO a 4/5 ranking, 5 being the highest. Defendant KIMMERLE told Plaintiff INGUANZO that she felt Plaintiff INGUANZO was overqualified for her position, and therefore could not give her a 5/5 rating.

44. Almost immediately thereafter, on or about November 15, 2010, Defendant HSI hired Defendant HORTON as Program Manager to replace Edward Reardon. **Defendant HORTON does not have a Licensed Master Social Worker degree.**

45. On or about March 7, 2011, Plaintiff INGUANZO again asked for the raise she had been promised for the past two (2) years. Defendant KIMMERLE denied Plaintiff INGUANZO's request for such a raise. Plaintiff INGUANZO then complained to Defendant KIMMERLE that she believed such raise was being unfairly withheld from her for discriminatory reasons, namely discrimination based on her race and national origin.

46. Plaintiff INGUANZO also complained to Defendant HORTON about not receiving a raise and the disparity in pay between men and women. **In response, Defendant HORTON just laughed.**

47. On or about April 26, 2011, Plaintiff INGUANZO complained to Defendant HORTON about the discrimination and retaliation she was enduring, specifically that she was disciplined for fabricated reasons solely because she had complained about national origin, gender, and race discrimination.

7

48. **Surprisingly, Defendant HORTON told Plaintiff INGUANZO that he believed her performance evaluation was delayed in order to preclude her from receiving a salary increase.**

49. Defendants relentlessly began to retaliate against Plaintiff INGUANZO because of her complaints of discrimination.

50. By way of example, on or around July 18, 2011, Defendant HORTON denied Plaintiff INGUANZO's request to use vacation and personal days that she had accrued. **Defendant HORTON needed Plaintiff INGUANZO to remain in the office to do what he considered "woman's work," for example decorating and manual labor.** However, before Plaintiff INGUANZO had complained of discrimination, she had been allowed to use her accrued vacation time from December 18, 2009 to January 8, 2010. **Upon information and belief, all employees who had not complained of discrimination in the workplace were allowed to use their accrued vacation time as requested.**

51. Moreover, Defendant KIMMERLE forced Plaintiff INGUANZO to take a remedial writing class despite the fact that she had previously received compliments from management on her writing capabilities. Defendant KIMMERLE's actions were solely in retaliation for Plaintiff INGUANZO's continued complaints of discrimination.

52. Because she was not receiving help from Defendant HSI nor their management, Plaintiff INGUANZO took her complaints of discrimination to the New York State Division of Human Rights. Immediately thereafter, Defendant HSI increased their systematic retaliation directed at Plaintiff INGUANZO.

53. By way of example, Defendant HSI changed Plaintiff INGUANZO's employment status from exempt to non-exempt, a clear demonstration to Plaintiff INGUANZO that she had

reached the proverbial glass ceiling at Defendant HSI.

54. On June 21, 2011, Plaintiff INGUANZO received a poor performance evaluation from Defendant HORTON, which poor performance evaluation was predicated on fabricated reasons.

55. As a follow up to her discrimination complaints on January 18, 2011, February 15, 2011, and March 1, 2011, on or about June 27, 2011 Plaintiff INGUANZO complained to Defendant HORTON again about being subjected to discrimination based on her gender, race, and national origin.

56. Upon information and belief, Defendant HORTON entirely disregarded Plaintiff INGUANZO's complaints and refused to rectify the situation.

57. Defendant HSI also precluded Plaintiff INGUANZO from being promoted.

58. By way on example, on or about July 20, 2011, Plaintiff INGUANZO expressed interest in the vacant Scatter-Site Program Manager position. Ada Tavares, Defendant HSI's Human Resources Manager, informed Plaintiff INGUANZO that she was not eligible for such a position because she did not have a Licensed Master Social Worker degree, despite the fact that Asha Smith, the individual who formerly held the position, did not have Licensed Master Social Worker degree. In fact, neither Edward Reardon, a former Program Manager, nor Defendant HORTON, a current Program Manager, held such a degree.

59. Defendant HSI's campaign of retaliation against Plaintiff INGUANZO continued relentlessly.

60. By way of example, on or about August 11, 2011 and September 23, 2011, Plaintiff INGUANZO was mandated to take her two (2) employee appreciation/vacation days, instead of taking off on days that she wanted. Upon information and belief, Plaintiff

INGUANZO was the only employee of Defendant HSI who was mandated to take these vacation days when she did not want to.

61. By way of further example, **on or around September 9, 2011, Defendant KIMMERLE demanded that Plaintiff INGUANZO complete two (2) months worth of assignments in three (3) weeks.** Defendant KIMMERLE knew such demands were unrealistic, and so did not provide such demands to other employees of Defendant HSI. **Defendant KIMMERLE further stated that all employees who are unable to meet their assignments in a timely fashion would not be approved for requested vacation time.** Defendant HORTON then refused to assist Plaintiff INGUANZO in any way with regard to these assignments. As a result, Plaintiff INGUANZO complained about Defendant KIMMERLE and HORTON's clear acts of discrimination to Molly Mattimore, Defendant HSI's Senior Director of Operations.

62. By way of further example, on or around September 15, 2011, Defendant KIMMERLE refused to send Plaintiff INGUANZO to Part I of a new technology training seminar, despite her requests. Instead, Defendant KIMMERLE sent Plaintiff only to Part II of the new technology training seminar, and thereafter mandated that Plaintiff INGUANZO was responsible for mastering the information presented at both parts of the seminar.

63. **Defendant KIMMERLE was intentionally precluding Plaintiff INGUANZO from performing her job.**

64. Moreover, from August 2011 to October 2011, Defendant HORTON refused to supervise Plaintiff INGUANZO at all, or help her in any way, in clear retaliation for her continued complaints of discrimination.

65. On or around October 26, 2011, Plaintiff INGUANZO complained again to Mollie

Mattimore. Upon information and belief, Defendant HSI did not attempt to rectify or address Plaintiff INGUANZO's complaints in any way.

66. **After months and months of unanswered complaints, on November 3, 2011, Defendant HSI terminated Plaintiff INGUANZO's employment.**

67. **Plaintiff INGUANZO's termination was clearly in retaliation for her continued complaints about gender, race, and national origin discrimination.**

68. Plaintiff INGUANZO felt offended, disturbed, stigmatized, and humiliated by this unlawful discrimination and retaliation.

69. As a result of the acts and conduct complained of herein, Plaintiff INGUANZO has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

70. Plaintiff further experienced severe emotional and physical distress.

71. As a result of the above, Plaintiff INGUANZO has been damaged in an amount in excess of the jurisdiction of the Court.

72. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff INGUANZO demands Punitive Damages as against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

73.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

74. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender, race, and national origin.

75. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender, race, and national origin.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

78. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

12

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

81. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff because of her gender, race, and national origin.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

84. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

87. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

90. Defendants violated the section cited herein as set forth.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility; or

      2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

      3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

15

    c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

93. Defendants violated the section cited herein as set forth.

## JURY DEMAND

94. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 and the Administrative Code § 8-107 et seq., by discriminating against Plaintiff on the basis of her gender, race, and national origin, and retaliating against her for her complaints of such discrimination;

B. Awarding damages to the Plaintiff, retroactive to the date of her discharge for all lost wages and benefits resulting from Defendants' termination of Plaintiff INGUANZO's employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       November 9, 2012

                                                **PHILLIPS & PHILLIPS,**
                                                **ATTORNEYS AT LAW, PLLC**

                                                _/s/ Jesse C. Rose_
                                                Jesse C. Rose
                                                   Of Counsel
                                            30 Broad Street, 35th Floor
                                            New York, NY 10004
                                            (212) 248 7431
                                            jrose@tpglaws.com

EEOC Form 161 (11/09)     U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Marian M. Inguanzo<br>1439 East Avenue, Apt. #6H<br>Bronx, NY 10462 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2012-00924 | Holly M. Woodyard, Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>**more than 2 years (3 years)**</u> **before you file suit may not be collectible.**

On behalf of the Commission

_signature_          August 17, 2012

Kevin J. Berry,        (Date Mailed)
District Director

Enclosures(s)

cc:
HOUSING & SERVICES, INC.
461 Park Avenue South, 6th Floor
Attn: Director of Human Resources
New York, NY 10016

Brandon Okano, Esq.
Leeds Morelli & Brown, PC
One Old Country Road, Suite 347
Carle Place, 11514