UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
MARIAN M. INGUANZO,                                    12-CV-8212

                    Plaintiff,

            v.

HOUSING & SERVICES, INC., KRISTI KIMMERLE-
CLENTI AND DERRICK HORTON,

                    Defendants.
--------------------------------------------------------------------x


# DEFENDANTS HOUSING & SERVICES, INC. & KRISTI KIMMERLE'S MEMORANDAUM OF LAW IN SUPPORT OF THEIR F.R.C.P. RULE 56 MOTION FOR SUMMARY JUDGMENT


HOEY, KING, EPSTEIN,
PREZIOSO & MARQUEZ
Attorneys for Defendants
Housing & Services, Inc.
and Kristi Kimmerle
55 Water Street, 29th Floor
New York, New York 10041
(212) 612-4200

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................iii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................2

ARGUMENT ...................................................................................................................2

      PLAINTIFF CANNOT ESTABLISH HER CLAIMS OF DISCRIMINATION
      BASED ON GENDER, RACE, OR NATIONAL ORIGIN .....................................1

           A.      Plaintiff's <u>Prima Facie</u> Case of Discrimination Fails ...................2

                1.      Plaintiff's Failure to Promote Claim .................................3

                2.      Plaintiff's Failure to Receive a Salary Increase Claim ..............7

                3.      Vacation Request Refusal .................................................8

                4.      Plaintiff's Termination .....................................................8

                5.      Plaintiff has not put forth any evidence of "Similarly
                      Situated" case managers that were treated better than she .........11

                6.      Plaintiff's replacement was a member of the same protected
                      classes and the decision makers for hiring her replacement, and
                      hiring and firing Plaintiff were the same .........................11

           B.      The Actions Or Decisions About Which Plaintiff Complains Were
              Taken or Made For Legitimate, Non-Discriminatory Reasons ............14

           C.      Plaintiff Cannot Demonstrate that HSI's Actions Were Pretextual ..........2

      PLAINTIFF HAS NOT ESTABLISHED A CLAIM OF RETALIATION ...............15

      PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS AS
      AGAINST THE INDIVIDUALLY NAMED DEFENDANTS .............................19

      PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE
      STRICKEN AS A MATTER OF LAW ...........................................21

THE COURT SHOULD DECLINE TO EXERCISE
JURISDICTION OVER PLAINTIFF'S CITY LAW CLAIMS
FOR  LACK  OF  SUPPLEMENTAL  JURISDICTION ............................................. 21

CONCLUSION ............................................................................................................. 22

## TABLE OF AUTHORITIES

**CASES**

Beachum v. AWISCO New York, 785 F.Supp.2d 84, 94-95 (S.D.N.Y. 2011) .................... 6

Belgrave v. City of New York, 1999 WL 692034 at *27 (E.D.N.Y. Aug. 31, 1999) ................ 11

Bennett v. Health Management Systems, Inc., 92 A.D.3d 29, 46 (1st Dep't. 2011) ............ 12, 13

Bennett v. Watson Wyatt & Co., 136 F.Supp.2d 236, 249-250 (S.D.N.Y 2001) .................... 12

Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) .................... 7, 14

Buckman v. Calyon Securities (USA) Inc., 817 F.Supp.2d 322 (S.D.N.Y. 2011) .................... 14

Bucknell v. Refined Sugars, Inc., 82 F.Supp.2d 151 (S.D.N.Y. 2000) .................... 19

Cabrera v. Jakabovitz, 24 F.3d 372 (2d Cir. 1994) .................... 15

Cordell v. Verizon Communications, Inc., 331 Fed. Appx. 56 (2nd Cir. 2009) .................... 13

Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 249 .................... 14

Dabney v. Christmas Tree Shops, 2013 WL 3820668 (S.D.N.Y. 2013) .................... 13

Davis-Bell v. Columbia University, 851 F.Supp. 2d 650 (S.D.N.Y. Mar. 19, 2012) .................... 5

Estate of Hamilton v. City of New York, 627 F.3d 50, 55 (2d Cir.2010) .................... 4, 5

Farias v. Instructional Systems, Inc., 259 F.3d. 91 (2nd Cir. 2001) .................... 21

Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) .................... 15, 16, 17

Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 294 (2nd Cir. 2004) .................... 17

Francis v. Runyon, 928 F.Supp. 195, 203 (E.D.N.Y. 1996) .................... 12

Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2nd Cir. 1997) .................... 13

Graham v. Long Island R.R., 230 F. 3d. 34 (2d Cir. 2000) .................... 6

Gross v. National Broadcasting Co., Inc., 232 F. Supp.2d 58 (S.D.N.Y. 2002) .................... 12

Hartley v. Rubio, 785 F.Supp.2d 165 (S.D.N.Y. 2011) .................... 16

Holt v. KMI-Continental, Inc., 95 F.3d 123 (2d Cir. 1996) ...................................... 16

Joseph v. New York City Dept. of Corrections,
2011 WL 1843162 (E.D.N.Y. May 13, 2011) ..................................................... 2

Kolstad v. American Dental Ass'n, 527 U.S. 526, 529-30, 119 S. Ct. 2118 (1999) .................. 21

Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 20011) ............................................ 6

Mazzella v. RCA Global Communications, Inc.,
642 F. Supp. 1531, 1546 (S.D.N.Y. 1986) ......................................................... 12

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ...................................... 2

Medical Exp. Ambulance Corp. v. Kirkland,
79 A.D.3d 886, 913 N.Y.S2d 296 (2d Dep't. 2010) .............................................. 20

Miloscia v. B.R. Guest Holdings LLC, 33 Misc.3d 466,
928 N.Y.S.2d 905 (N.Y. Sup. Ct. 2011) ..................................................... 19-20

Moran v. Fashion Institute of Technology,
2002 WL 31288272 (S.D.N.Y. Oct. 7, 2002) ................................................... 20

Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir.2004) ........................................ 5

Ralkin v. New York City Transit Authority,
62 F.Supp.2d 989, 996 (E.D.N.Y.1999) ......................................................... 11

Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170 (2d Cir. 1996) .................................. 17

Risco v. McHugh, 868 F.Supp.2d 75 ............................................................. 6

Schnabel v. Abramson, 232 F.3d. 83 (2nd Cir. 2000) ............................................. 13

Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997) .......................... 6

St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) ..................................... 15, 16

Strauss v. New York State Dept. of Educ., 26 A.D.3d 67,
805 N.Y.S.2d 704 (3d Dep't. 2005) ............................................................ 20

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981) ............................... 16

Turowski v. Triarc Companies, Inc., 761 F.Supp.2d 107 (S.D.N.Y. 2011) .......................... 20

University of Texas Southwestern Medical Center v. Nassar,
133 S. Ct. 2517 (2013) ..................................................................................17

Weinstock v. Columbia University, 224 F.3d 33 (2d Cir. 2000) ...........................19

**STATUTES**

42 U.S.C §§ 2000e ...........................................................................................1

28 U.S.C. § 1367 .............................................................................................1

N.Y.C. Admin. Code §§ 8-101 ..........................................................................1

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Marian M. Inguanzo ("Plaintiff"), a former case manager at Housing & Services, Inc. (hereinafter HSI), brings this action pursuant to 42 U.S.C §§ 2000e, <u>et seq.</u> ("Title VII") and the New York City Human Rights Law ("CHRL"), NYC Administrative Code §§ 8-101, <u>et seq</u>. Plaintiff alleges that defendants Housing & Services, Inc. ("HSI") and Kristi Kimmerle (incorrectly sued as Kristi Kimmerle-Cilenti) (collectively, "Defendants")[1] discriminated against her in employment on the basis of her gender, national origin and race. Plaintiff further claims that defendants retaliated against her for complaining about discrimination.

With respect to her allegations, Plaintiff claims that HSI discriminated against her on the basis of her gender, national origin and race by treating her disparately from similarly-situated employees by (1) failing to promote her; (2) failing to give her a salary increase; and (3) terminating her employment. Plaintiff also claims she was retaliated against for complaining about said discrimination.

Defendants deny Plaintiff's allegations and are entitled to summary judgment dismissing Plaintiff's claims for the following reasons:

(1)     Absent any evidence of discriminatory words, conduct or disparate treatment, Plaintiff cannot state a cause of action for gender, race and national origin discrimination;

(2)     Plaintiff fails to state a <u>prima facie</u> case of retaliation.

(3)     Plaintiff fails to set forth evidence demonstrating that the individually named defendant can be found liable under an "aider and abettor" theory of law.

---

[1] Defendant Derrick Horton is, upon information and belief, a resident of the state of New Jersey and has not been properly served with the complaint in this matter.

1

## STATEMENT OF FACTS

For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to Defendants' Local Civil Rule 56.1 statement and the exhibits and portions of deposition transcripts upon which it is based.

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT ESTABLISH HER CLAIMS OF DISCRIMINATION BASED ON GENDER, RACE, OR NATIONAL ORIGIN

**A.      Plaintiff's <u>Prima</u> <u>Facie</u> Case of Discrimination Fails**

To establish a <u>prima</u> <u>facie</u> case of discrimination based on gender, race and national origin discrimination under Title VII, Plaintiff must show the following: (1) that she was within the protected groups; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment decision; and, (4) that the adverse employment decision occurred under circumstances giving rise to an inference of discrimination based on race or national origin. <u>See McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

The CHRL, however, requires a more liberal analysis, pursuant to the New York City Local Civil Rights Restoration Act of 2005, to meet the broad remedial purposes of the statute. Under the expansion, plaintiffs no longer need to show that an adverse employment action is materially adverse to them for purposes of defeating a summary judgment motion. However, notwithstanding the more liberal construction of the CHRL, a plaintiff must still demonstrate that the putative adverse employment action suffered was motivated by impermissible animus. A failure to do so will still defeat a claim brought under the CHRL. <u>Joseph v. New York City Dept. of Corrections</u>, No. 10 CV 1265 (NGG)(LB), 2011 WL 1843162 (E.D.N.Y. May 13, 2011).

In the instant case, Plaintiff cannot establish a <u>prima facie</u> case of discrimination based on gender, race or national origin under Title VII *or* the CHRL. Specifically, although Plaintiff is a member of the protected classes and assuming, without conceding, that she was qualified for the position she held, Plaintiff cannot demonstrate that any action of which she complains occurred under circumstances giving rise to an inference of discrimination.[2]

Plaintiff alleges that after she complained to the New York State Division of Human Rights (the "SDHR") "HSI increased their systematic retaliation." (Epstein Decl. Ex. D ¶ 52). However, Plaintiff's complaint is stamped received by the SDHR on December 12, 2011 and the transmittal letter from the SDHR to HSI is dated December 13, 2011 - well over a month *after* Plaintiff was terminated. (Id. at Ex. A). While employed, Plaintiff did sent a letter to Ada Tavares, HSI's human resources manager dated July 19, 2011 but received on October 14, 2011 alleging discrimination. (Id. Ex. W; Ex. G at 46, 47). An attorney sent a claim letter on August 8, 2011. (Id. Ex. GG).

### 1.    Plaintiff's Failure to Promote Claim

Plaintiff claims that she was not promoted to the position of program manager for discriminatory reasons; however, this claim does not withstand legal scrutiny and must be dismissed.

Plaintiff was not qualified for the position at issue. During the two and a half years of Plaintiff's employment, two program manager positions became available for which Plaintiff claims she should have been considered. The first was at HSI's Narragansett facility (the "Narragansett"), and the second at HSI's Scatter-Site housing program. (Id. Ex. F at 44). Plaintiff admits that she did not apply for either position (Id. Ex. F at 45), but claims that she asked about

---

[2] The Complaint is attached as Exhibit D to the Declaration of Rhonda L. Epstein in Support of Defendants Housing & Services, Inc. & Kristi Kimmerle's F.R.C.P. Rule 56 Motion For Summary Judgment ("Epstein Decl.")

the positions (Id. Ex. F at 45-46) and was told each time that the positions required a Licensed Master Social Worker (LMSW), a license Plaintiff did not possess, does not currently possess, and did not attempt to obtain while employed at HSI – despite the fact that Ms. Kimmerle offered on behalf of HSI to help pay for part of Plaintiff's fees and gave Plaintiff her own book to study from for the licensing exam. (Id. Ex. F at 48-49; Ex. N).

At the time Plaintiff was hired, Edward Reardon was the program manager at the Narragansett, a position he held until March 2009 when he became ill and Ms. Kimmerle, a LMSW, temporarily took over the position. (Id. Ex. F at 31-32). Derrick Horton, an African American male, was hired as the program manager in November 2010 (Id. Ex. F at 33, 104). While Mr. Horton did not have his LMSW at the time of his hire, his employment was conditioned on him obtaining this license within his probationary period and in fact he did. (Id. Ex. G at 39).

The contract between HSI and the City of New York, Department of Social Services of the Human Resources Administration ("HRA") required that the Program Manager of the Scatter-Site possess a LMSW. (Id. Ex. K; Ex. G at 34-35). And in accordance with the contractual terms and obligations the individual ultimately hired for this position, Sarah Stolfi, had this license (Id. Ex. G at 37). It is beyond dispute that Plaintiff was not qualified for the Program Manager positions.

It is well settled law that in order to establish a "failure to promote claim" Plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position: and (4) the position remained open and the employer continued to seek applicants having the Plaintiff's qualifications." Estate of Hamilton v. City of New York, 627 F.3d 50, 55 (2d

Cir.2010)(quoting Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir.2004)) (quotation marks omitted). See Davis-Bell v. Columbia Univ., 851 F.Supp. 2d 650 (S.D.N.Y. Mar. 19, 2012).

Here, Plaintiff admits that she never formally applied for either position while working at HSI *and* admits that she does not possess a LMSW (Epstein Decl. Ex. F at 45-46). Notably, Plaintiff cannot demonstrate that HSI promoted other employees to the positions she sought who did not have (or were not in the process of obtaining) the requisite LMSW. Although Plaintiff alleges without any proof that none of the other program managers in these positions had a LMSW (Id. Ex. D at ¶ 58), this is not true.

While Asha Smith, the former program manager of the Scatter-Site program, did not have a LMSW, once the contract with HRA went into effect and the Scatter-Site program grew from a 20-unit program to a 100-unit program, a LMSW became a contractual requirement for the program manager position in which Plaintiff was interested. Ms. Smith was thus demoted and Sarah Stolfi, a LMSW, was hired for the position. (Id. Ex. G at 37-38). There is no evidence that Ms. Stolfi is similarly situated to Plaintiff, as from the outset Ms. Stolfi held the LMSW, a license and qualification Plaintiff did not have. (Id. Ex. G at 13, 37-38). Plaintiff was not qualified for the Scatter-Site program manager position bestowed on Ms. Stolfi, as Plaintiff did not and was not in the process of obtaining the contractually required LMSW. Moreover, there is no competent evidence that Ms. Stolfi does not in fact fall within Plaintiff's protected classes, as Plaintiff admits she does not know Ms. Stolfi's race or national origin. (Id. Ex. F at 108-109).

A similar argument applies to the first program manager position in which Plaintiff claims she expressed an interest, at the Narragansett. As set forth above, once Mr. Reardon left the position in March 2009, Ms. Kimmerle, a LMSW temporarily took over the program manager position. (Id. Ex. F at 31-32). Mr. Horton, an African American male, was then hired as

the program manager for the Narragansett. (Id. Ex. F at 33, 104). While Mr. Horton did not have his LMSW at the time of his hire, he was in the process of obtaining the same, his employment was conditioned on him actually obtaining his license within his probationary period, and he did ultimately obtain his LMSW. (Id. Ex. G at 39; Ex. BB). Thus, once again, Plaintiff, who did not possess a LMSW and was not in the process of obtaining the same, was not similarly situated to Mr. Horton, as she was not qualified for the program manager position at the Narragansett.

The Second Circuit has held that in order "to be similarly situated, the individuals with whom [plaintiff] attempts to compare [herself] must be similarly situated in all material respects." See Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997), 868 F.Supp.2d 75; see also, Risco v. McHuch, 868 F. Supp. 2d 75 (S.D.N.Y., 2012), Graham v Long Island Rail Road, 230 F. 3d. 34 (2d Cir. 2000). While the law does not require a comparator to be identical in all respects, a plaintiff must show a "reasonable close resemblance of facts and circumstances." See Beachum v. Awisco New York, 785 F.Supp.2d 84, 94-95 (S.D.N.Y. 2011), quoting, Lizardo v. Denny's Inc., 270 F.3d 94, 101 (2d Cir. 20011) (employees with different job titles not similarly situated employees). Here, there is no such indicium of Ms. Stolfi or Mr. Horton being similarly situated employees to Plaintiff, for, unlike Plaintiff, they each possessed or were the process of obtaining the requisite LMSW license for the HSI program manager positions. Plaintiff's "failure to promote" claims are thus ill-conceived and, as such, warrant dismissal.

Plaintiff also alleges that her employment status was changed from exempt to non-exempt, and cites to same as evidence of discrimination and/or retaliation. (Epstein Decl. Ex. D ¶53). However, Plaintiff has not submitted any proof that such was the case, and, in fact, her last

review indicates she was an exempt employee (Id. Ex. R). No documentation has been exchanged to contradict this evidence.

### 2.    Plaintiff's failure to receive a salary increase claim

Plaintiff claims that HSI denied her a salary increase during her tenure as an employee, yet she freely admits she (i) knows of no HSI employee who did receive a raise during her tenure and (ii) was explicitly told that no HSI employee received a raise during that period. (Id. Ex. F at 35-39). In fact, from the time of Plaintiff's hire up to the date of Ms. Kimmerle's deposition (September 12, 2013), **no HSI employee received even a cost of living adjustment**. (Id. Ex. G at 48). In her complaint, Plaintiff claims that a "late" annual review inhibited her from receiving a pay raise or promotion (Id. Ex. D at ¶¶ 35-38, 48), however Plaintiff offers no evidence whatsoever in support of this allegation or supporting her claim that her failure to receive a raise was borne of discriminatory animus. Plaintiff's suggestion that her failure to receive a raise was due to her being Hispanic, Puerto Rican, female or in retaliation for allegedly complaining of discrimination is contradicted by the record, which is devoid of any evidence that Plaintiff was denied a raise where other similarly situated male, non-Hispanic or Puerto Rican employees were given raises.

Plaintiff's allegation that her failure to receive a raise is demonstrative of national origin and/or racial discrimination or retaliation is conclusory and without evidentiary support. See Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) (feelings and perceptions of being discriminated against are not evidence of discrimination) (quotation and citation omitted), cert. denied, 530 U.S. 1242 (2000); Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 249 n.20 (S.D.N.Y. 2000) (conclusory and speculative allegations of racial animus are insufficient to create an issue of fact). As such, her claim must be dismissed.

### 3.    <u>Vacation request refusal</u>

In her complaint, Plaintiff alleges that her request to use her accrued vacation and personal days was denied (Epstein Decl. Ex. D ¶ 50); however, the email exchange between Plaintiff and Ada Taveres, HSI's Human Resources Manager, clearly proves otherwise. (Id. Ex. S) Plaintiff was not denied the use of any of her entitled vacation or personal days, and she has not submitted proof to the contrary.

### 4.    <u>Training seminar</u>

In order to prevail on her claim of discrimination based on HSI's failure to offer her training, Plaintiff must show that she was denied training under circumstances that give rise to an inference of discrimination. <u>Risco v. McHuch</u>, 868 F. Supp. 2d 75 (S.D.N.Y., 2012). Here, Plaintiff claims she was excluded from the first part of a training seminar on or around September 15, 2011, but Plaintiff admits she was sent to the second part of this seminar. (Epstein Decl. Ex. D ¶ 62). In fact, Plaintiff was not excluded from this training, but rather was not in the office when the first part of the training was scheduled; she was on the vacation detailed above, and thus her training needed to be scheduled for a later date. (Id. Ex. V). Again, Plaintiff has not submitted any proof that she was excluded from training based on any discriminatory animus.

### 5.    <u>Plaintiff's termination</u>

Plaintiff further alleges that her termination was impermissibly based on her national origin and race and in retaliation for making complaints of discrimination. <u>See</u> Epstein Decl. Ex. D at ¶ 2. Again, Plaintiff's claim must fail, as there is no admissible evidence to suggest an adverse inference of discriminatory animus. Plaintiff was terminated by HSI for altering and falsifying records. As set forth in the offer letter, Plaintiff was an at-will employee. (Id. Ex. I). HSI's Code of Conduct explicitly states in its second paragraph, entitled "Individual

Responsibility," that an employee must adhere to the standards in the policy and that disciplinary action includes termination. Paragraph VII states: "It is HSI's policy to maintain accurate and honest records related to all reporting and billing requirements for both clients and staff; all employees will accurately and precisely reflect their time worked on timesheets and/or punch cards; staff is responsible for reporting client related incidents, work orders. Social service related notes, and/or financial related material will do so honestly, appropriately, and in accordance with governing departments, procedures and guidelines as well as reporting agency regulations." (Id. Ex. H).

The decision to terminate Plaintiff was not made in a vacuum: Plaintiff had a documented problem with completing her care plans in a timely fashion. This was addressed with her and documented in a Disciplinary Action Form dated April 28, 2010. (Id. Ex. N). Therein, it is discussed that Plaintiff failed to timely visit a client as required, and that notes were missing from the file. (Id. Ex. N). After this write-up a counseling meeting was held between Plaintiff and her then supervisor. (Id. Ex. CC). The next written documentation of Plaintiff's being made aware of the importance of timeliness of notes can be found in HSI's February 2011 supervision notes, which specifically state: "We discussed how Ms. Inguanzo can improve on the timely submission of her progress notes. She has agreed to put in time after work to address this issue." (Id. Ex. P). Yet Plaintiff was still found wanting in this area, and the issue was addressed again in her 2011 performance review on June 21 of that year. (Id. Ex. R).

Plaintiff's 2011 review was very positive overall, but it was specifically noted on its second page that Plaintiff was often late with her care plans – a fact that could have a negative impact on the organization. (Id. Ex. R). Right after this review, two separate meetings were held with Plaintiff (July 18, 2011 and August 4, 2011) wherein *inter alia* the expectation that care

9

plans are to be completed on time, and the importance of proper documentation was again expressed to Plaintiff. (Id. Ex. DD). Then, just two months after receiving her review, Plaintiff sent a memo to her supervisor dated August 26, 2011, the Friday before she was to leave for a two week vacation advising that five care plans and nine annual psychosocial assessments were required to be completed within days of her going on vacation. (Id. Ex. T). This was irresponsible and unacceptable, especially since the annual psychosocial reports are due once a year and the care plans are due every six months, and thus Plaintiff had notice of when the reports were due well in advance of her planned vacation. (Id. Ex. F at 94-95). HSI could lose funding from a funding source if the care plans are not prepared as required. (Id. Ex. G at 21). It is with this backdrop that the three back-dated care plans that immediately proceeded Plaintiff's termination should be reviewed.

In October, chart reviews were conducted by Plaintiff's supervisor, and it was discovered that three of Plaintiff's client care plans were out of compliance with HRA/HASA contractual guidelines and HSI standards. Plaintiff had in fact back dated three client care plans. The chart reviews, care plans and the embedded metadata snap shot evidence the precise date and time that the work was done, clearly showing that Plaintiff falsified records. (Id. Ex. G at 67-68; Ex. Y). Initially after the chart review when it was discovered that Plaintiff was missing three care plans which were past due, Plaintiff was sent an email from her supervisor alerting her to the problem and advising that another review would be held on October 26; Plaintiff's response was that the date was unrealistic but that she would try. (Id. Ex. X). Thereafter a disciplinary action form dated Oct 24, 2011 was issued. (Id. Ex. Z). The very next day Plaintiff turned in the three care plans all with dates preceding the original chart review date. Her supervisor asked her to put the correct date on the service plans and she refused to correct the dates to the dates when she had

10

actually met, created and executed the documentation with the clients. (Id. Ex. G at 65). Ms. Kimmerle testified: "[Plaintiff] was directly asked to 'Fix these, they're late,' they weren't in the chart, and she said, 'NO.'" (Id. Ex. G at 65). Not only was Plaintiff's statement in direct conflict with her email (Id. Ex. X), the computer metadata clearly proves that the documents were created on October 20, 21, 25 and 26. (Id. Ex. Y). In summary, these care plans were created past the due date, her supervisor told her they were late and sent her an email with regard to same (Id. at Ex. X), and he also spoke with her and told her correct the documents by putting the actual date she met with the clients on the forms (Id. Ex. G at 67-68). He knew it was not the date she had written on the forms she ultimately submitted because she had admitted this to him in their discussion. (Id. Ex. G at 68) Thus, Plaintiff was once again late to file crucial documentation, falsified the records, lied to her supervisor, and was then insubordinate in her refusal to correct the documents when directly ordered to do so. This, together with her pattern of turning her work in late, led to the decision was made to terminate her employment. (Id. Ex. G at 67; Ex. AA).

      **6.**      **Plaintiff has not put forth any evidence of "Similarly Situated" case managers that were treated better than she**

To satisfy the fourth element of the prima facie case, Plaintiff must allege facts showing circumstances that would permit a rational finder-of-fact to infer a discriminatory motive. Ralkin v. New York City Transit Auth., 62 F.Supp.2d 989, 996 (E.D.N.Y.1999). To meet this obligation, a plaintiff ordinarily must show that employees "similarly situated" to plaintiff, but not within plaintiff's protected class, were treated preferentially. Shumway v. United Parcel Serv., 118 F.3d 60, 64 (2d Cir. 1997). But the application of this standard is strict. Belgrave v. City of New York, 1999 WL 692034 at *27 (E.D.N.Y. Aug. 31, 1999), aff'd 216 F.3d 1071 (2d Cir. 2000). The Second Circuit explained in Shumway that "[t]o be 'similarly situated' the individuals with whom [plaintiff] attempts to compare herself must be similarly

situated in all material respects*." Shumway*, 118 F.3d at 64. <u>Bennett v. Watson Wyatt & Co.</u>, 136

F.Supp.2d 236, 249-250 (S.D.N.Y 2001): "Employees are not similarly situated merely because

their conduct might be analogized. Rather, in order to be similarly situated,

> (1)     other employees must have reported to the same supervisor as the plaintiff,
> (2)     must have been subject to the same standards governing performance evaluation and discipline, and
> (3)     must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it."

<u>Id.</u> (numbers added) citing <u>Francis v. Runyon</u>, 928 F.Supp. 195, 203 (E.D.N.Y. 1996); *see also*

<u>Gross v. National Broadcasting Company, Inc.</u>, No. 00 Civ. 5776 (SAS), 232 F. Supp.2d 58

(S.D.N.Y. 2002).

Courts have not hesitated to grant summary judgment for the defendant where the

plaintiff is unable to point to any similarly situated employees with the same performance

deficiencies. <u>Mazzella v. RCA Global Communications, Inc.</u>, 642 F. Supp. 1531, 1546 (S.D.N.Y.

1986) (to be similarly situated, other employees "must have engaged in conduct similar to the

plaintiff's"); and <u>Lowe v. J.B. Hunt Transport</u>, 963 F.2d 173, 175 (8th Cir. 1992) (fellow

employee who was not disciplined but did not suffer from same performance failings as plaintiff

was not similarly situated.)

Plaintiff cannot - and does not - show that any "similarly situated" employee exhibited

the same types of performance deficiencies as she did and were not terminated

Plaintiff fails to identify any other case manager with the same disciplinary history as she

who was treated more favorably by Defendants. <u>See</u> <u>Bennett v. Health Management Sys., Inc.</u> 92

A.D.3d 29, 46 (1ˢᵗ Dep't. 2011)(Plaintiff CHRL claims dismissed where failed to produce any

evidence that employees outside of his protected class but with the same disciplinary history as

he who was treated more leniently.)

**7.  Plaintiff's replacement was a member of the same protected classes and the decision makers for hiring her replacement, and hiring and firing Plaintiff were the same**

Plaintiff was replaced by Daisy DeLaRosa, a Hispanic woman believed to be of Puerto Rican national origin. (Epstein Decl. Ex. G at 69-70. ) Ms. Kimmerle and Mr. Horton made the decision to hire this individual. (Id. Ex. G at 69). Ms. Kimmerle was also one of the decision makers involved in hiring Plaintiff (Ex. G at 32) and was also one of the individuals along with Mr. Horton who participated in the decision to terminate her employment. (Ex. G at 61, 62).

The Second Circuit adheres to the rule that when the same person was both the hirer and firer, a strong inference exists that discrimination was not a factor in the termination decision. See Grady v. Affiliated Cent., 130 F.3d 553, 560 (2nd Cir. 1997), Cordell v Verizon Communications, 331 Fed. Appx. 56 (2nd Cir. 2009), Dabney v Christmas Tree Shops, _F.Supp. 2d_ , 2013 WL 3820668, (S.D.N.Y. 2013)The rationale is obvious – it is illogical to impute an invidious motive to the person that made the decision to fire an employee when that same person originally hired the employee. Schnabel v Abramson, 232 F.3d. 83 (2nd Cir. 2000)(three years between hiring and firing).

Plaintiff proffers no real evidence demonstrating that the individuals involved in her termination bore her any discriminatory animus. Plaintiff admits that in the two and a half years that she worked at HSI no one made a derogatory comment to her about her gender, race or national origin (Epstein Decl. Ex. F at 105). The only statement Plaintiff testified to that remotely addresses race was her allegation that Ms. Kimmerle stated "She had trouble finding a Hispanic qualified social worker." (Id. Ex. F at 106) This is belied by the fact that the social worker that was Plaintiff's replacement was both Hispanic and the same national origin as Plaintiff and that Plaintiff herself identified Ada Tavares as a Hispanic case manager that was

13

promoted to the head of Human Resources as well as Johnnie Chavez as a Hispanic social worker that was likewise promoted. (Id. Ex. F at 103, 107-110)

Moreover this statement is at best an isolated comment. See Buckman v. Calyon Securities, 817 F.Supp.2d 322, (S.D.N.Y. 2011) (a isolated comment made remote in time and context of the complained of action amounts to nothing more than a stray remark and cannot support a reasonable inference of discrimination.)

Plaintiff's conclusion that her termination was motivated by discriminatory bias stems from her own subjective belief and is insufficient to make out a prima facie case of discrimination. See Bickerstaff v. Vassar College, 196 F.3d 435(2d Cir. 1999) (feelings and perceptions of being discriminated against are not evidence of discrimination) (quotation and citation omitted), cert. denied, 530 U.S. 1242 (2000); Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, (S.D.N.Y. 2000) (conclusory and speculative allegations of racial animus are insufficient to create an issue of fact). Plaintiff's inability to present evidence of discriminatory animus held by any of the defendants combined with her inability to show that their treatment of her deviated from their treatment any of other similarly situated employees prevents Plaintiff from demonstrating any inference of race or national origin discrimination by Defendants. Plaintiff's prima facie case fails under Title VII and the CHRL warranting dismissal her race and national origin discrimination and retaliation claims.

B.      **The Actions Or Decisions About Which Plaintiff Complains Were Taken or Made For Legitimate, Non-Discriminatory Reasons**

Even assuming, arguendo, that Plaintiff's conclusory allegations are sufficient to establish a prima facie case of discrimination, Defendants have articulated legitimate non-discriminatory reasons for each of the alleged adverse employment actions. See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998). Here it is

undisputed that Program Manager positions required a LMSW and that Plaintiff did not and does not possess this license. It is further undisputed that Defendant gave Plaintiff a study book and offered to help her pay the costs to obtain this license but she never took them up on this generous offer. It is also undisputed that no HSI employees received raises during the time Plaintiff was employed.

Plaintiff's termination was also based on legitimate business reasons: Plaintiff failed to fulfill her job duties and responsibilities, she falsified client records, was insubordinate which together with her history of performance issues warranted termination. The evidence is clear that HSI truly believed that Plaintiff falsified client records, was insubordinate and that her history of performance issues warranted termination.

Defendants had legitimate business reasons for their actions and Plaintiff's disagreement with those reasons is immaterial and fails to revive her claim.

## C.    Plaintiff Cannot Demonstrate that HSI's Actions Were Pretextual

Once a defendant has met its burden of offering a legitimate non-discriminatory reason for the adverse personnel action, "the presumption that triggered the defendant's burden of production . . . 'drop[s] out of the picture.'" Cabrera v. Jakabovitz, 24 F.3d 372, (2d Cir. 1994) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, (1993)). The "factual inquiry proceeds to a new level of specificity," St. Mary's, 509 U.S. at 516; Fisher v. Vassar College, 114 F.3d, 1332, (2d Cir. 1997)(in banc), cert. denied, 522 U.S. 1075 (1998). The burden shifts back to plaintiff to put forth adequate evidence to support a rational finding that the "legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's [race, national origin, or prior discrimination complaint] was the reason for [the

adverse decision.]" Holt v. KMI-Continental, Inc., 95 F.3d 123, (2d Cir. 1996), cert. denied, 520 U.S. 1228 (1997).

In all cases, the plaintiff always "retains that ultimate burden of persuading the [trier of fact] that [she] has been the victim of intentional discrimination." Fisher, 114 F.3d at 1336 (quoting St. Mary's, 509 U.S. at 508 (quoting Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, (1981) (alteration in St. Mary's))). Merely showing that the employer's proffered reason is pretextual -- that the stated reason is not the real reason -- will not necessarily carry the plaintiff's ultimate burden of persuasion. Rather, the plaintiff must also demonstrate that the true reason was an illegally discriminatory one. Fisher, 114 F.3d at 1338; see St. Mary's, 509 U.S. at 515.

Given the record in this case, and even viewing the facts in a light most favorable to the plaintiff, this Court can reach no other conclusion than that no rational trier of fact could find that defendants' actions support an inference that the actions and decisions about which Plaintiff complains were taken or made because of her race, national origin or retaliation. Plaintiff's allegations against Defendants amount to nothing more than conclusions and speculation of conspiracy that they wanted to terminate her due to her race and national origin or in retaliation. See Hartley v. Rubio, 785 F.Supp.2d 165, (S.D.N.Y. 2011). Not only are said allegations nonsensical given her race and national origin were known at the time she was hired, they are also absurd in light of the positive reviews Plaintiff was provided, the offer to aid her in obtaining her LMSW (Epstein Decl. Ex. F at 48-49; Ex. M) and that her replacement was of the same gender, race and national origin (Id. Ex. G at 70). Plaintiff's speculative conclusions are insufficient to demonstrate pretext.

## POINT II

### PLAINTIFF HAS NOT ESTABLISHED A CLAIM OF RETALIATION

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that (1) she engaged in protected activity; (2) defendant was aware of the protected activity; (3) she was subjected to an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, (2d Cir. 1996), Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 294 (2nd Cir. 2004). Failure to satisfy any of the prongs necessitates dismissal of the claim. In a recent decision, the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013). The Court went on to note that "[t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. If Plaintiff establishes prima facie case of retaliation the burden then shifts to defendant to articulate a legitimate business reason for its action(s). The ultimate burden then lies with Plaintiff to show pretext. See Fisher v. Vassar College, 114 F.3d 1332, (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998).

As set forth above, Plainitff did not file a charge with the SDHR until December 12, well over a month *after* she was terminated. (Epstein Decl. Ex. A) Thus this cannot be the basis of a retaliation complaint. Plaintiff did however send letters to HSI management complaining about her above mentioned disciplinary write-ups and reviews.

By letter dated June 27, 2011 Plaintiff wrote a memo referencing an "appeal request to removed from file for Disciplinary Action April 28, 2010. " (sic) This memo is solely dedicated to challenging the write-up from over a year before. (Id. Ex. HH). Shortly thereafter on or about

17

July 1, 2011, Plaintiff wrote another letter this time dedicated to her request for a raise. (Id. Ex. EE).

On July 18, 2011 a meeting was held with Plaintiff, Ada Tavares, Director of Human Resources, Derrick Horton, Program Manager and Kristi Kimmerle, Director of Programs. The meeting was held at the request of Plaintiff to review and challenge her recent performance review. At this meeting the expectation that care plans are to be completed on time so that HSI fulfills its contractual and service obligations was discussed. Plaintiff became insubordinate at this meeting. Plaintiff was also informed that "salary increases have not been awarded in three years" and that she would receive one once they were. The need for her to attend a writing course was also discussed. (Id. Ex. DD). After this meeting, Plaintiff wrote taking issue with her June 2011 performance evaluation. (Id. Ex. FF). Thereafter a meeting was held between Plaintiff and Derrick Horton, her supervisor, to review her response to the performance review. The memo memorializing this meeting states "She was reminded of the importance of timely documentation, particularly care plans and psychosocial assessments which are to be signed by the client, the program manager, herself and filed in the chart by the due date. It was discussed that any document that is not signed by the aforementioned persons and filed in the chart by the due date is considered late. Ms. Inguanzo was reminded of the importance of adhering to HASA policy and complying with all stated guidelines." (Id. Ex. DD). In none of these memos and at none of these meetings did plaintiff ever mention discrimination.

On August 8, 2011 HSI received a letter from an attorney stating they had been retained by Plaintiff with respect to her claims of discrimination based on gender and national origin. (Id. Ex. GG). The letter does not set forth this claim with any specificity. On October 14, 2011 HSI received a letter from Plaintiff dated July 19, 2011 claiming discrimination on the basis of age

and gender. The letter also mentions race. The crux of the complaint is the lack of a raise and promotion. (Id. Ex. W).

As a result of the above there was a meeting between Plaintiff and the Deputy Executive Director of HSI, Molly Mattimore. Plaintiff was asked to explain how she felt she was being discriminated against but she could not. The COLA was once again discussed with Plaintiff. (Ex. G at 49,50)

While defendant denies that Plaintiff has set forth a prima facie case of discrimination, for the purpose of this motion assuming arguendo that Plaintiff has established a prima facie case, as set forth herein, HSI has met its obligation is to articulate a non-discriminatory explanation for each of the actions Plaintiff claims were done in retaliation for complaints of discrimination. Plaintiff has not presented sufficient evidence that "more likely than not" the articulated explanation is false. Bucknell v. Refined Sugars, Inc., 82 F.Supp.2d 151, (S.D.N.Y. 2000). In addition, Plaintiff cannot show "that more likely than not [discrimination] was the real reason for the [employment action]." Weinstock v. Columbia University, 224 F.3d 33, (2d Cir. 2000).

## POINT III

### PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS AS AGAINST THE INDIVIDUALLY NAMED DEFENDANTS

Under Section § 8-107(6) of the CHRL, an individual employee may be held liable for "aiding and abetting" discriminatory conduct where it is shown that the individual defendant "actually participates in the conduct of the employer of giving rise to the discrimination claim ..." Miloscia v. B.R. Guest Holdings, LLC., 33 Misc.3d 466, 928 N.Y.S.2d 905, (N.Y. Sup. Ct. 2011). Crucial to the inquiry of "aider and abettor" liability, however, is a finding that the

employer indeed is liable for discriminatory conduct. See id., see also Moran v. Fashion Inst. of Tech., No. 00 Civ. 1275, 2002 WL 31288272, (S.D.N.Y. Oct. 7, 2002) (granting motion to dismiss after holding that "[a] plaintiff must first establish employer liability before prevailing on a claim against a supervisor individually" under the NYSHRL). Thus, where an employer is found not to have violated either the SHRL or the CHRL, an individual defendant cannot be held liable as an aider and abettor. See Miloscia, 33 Misc.3d at 471, 928 N.Y.S.2d at 917; see also Turowski v. Triarc Cos. Inc., 761 F.Supp.2d 107, (S.D.N.Y. 2011). Consequently, since Plaintiff cannot establish liability against the employer-defendant (HSI), Plaintiff's claims against the individual defendant Kristi Kimmerle must be dismissed. As argued, supra, discrimination claims are baseless and must fail as alleged against all defendants including the employer-defendant.

Lastly, the individually named defendants cannot be held liable as aiders and abettors because an individual cannot aid or abet his or her own conduct. See Medical Express Ambulance Corp. v. Kirkland, 79 A.D.3d 886, , 913 N.Y.S2d 296, (2d Dep't. 2010); Strauss v. New York State Dep't. of Educ., 26 A.D.3d 67, 805 N.Y.S.2d 704, (3d Dep't. 2005)(an individual cannot be held liable for violations committed by himself). So to the extent Plaintiff is claiming and could prove that Kristi Kimmerle personally engaged in any discriminatory conduct toward Plaintiff, she cannot be liable as an "aider and abettor" because one cannot "aid and abet" one's own conduct. Accordingly, the aiding and abetting causes of action against the individually named defendant must be dismissed.

## POINT IV

**PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE STRICKEN AS A MATTER OF LAW**

In the event that the Defendants' motion for summary judgment is denied, in whole or in part, Defendants respectfully request that the Court strike Plaintiff's claims for punitive damages on the ground that there is insufficient evidence to support a claim for these damages. Punitive damages are only available in cases of intentional discrimination when the defendant is shown to have discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." See Kolstad v. American Dental Ass'n, 527 U.S. 526, 529-30, 119 S. Ct. 2118 (1999). Under the appropriate circumstances, courts in the Second Circuit have not hesitated to dismiss on summary judgment baseless claims for punitive damages. See, e.g., Farias v Instructional Systems, Inc., 259 F.3d. 91 (2nd Cir. 2001) Plaintiff has failed to produce any evidence that would satisfy this stringent standard. Defendants respectfully request that Plaintiff's claim for punitive damages be stricken as a matter of law.

## POINT V

## THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFF'S CITY LAW CLAIMS FOR LACK OF SUPPLEMENTAL JURISDICTION

If this Court grants Defendants motion seeking to dismiss Plaintiff's federal claims, the Court should decline to exercise its supplemental jurisdiction and dismiss Plaintiff's claims that arise solely under city law.

28 U.S.C. § 1367 (c) provides in pertinent part:

> The district courts may decline to exercise
> Supplemental jurisdiction over a claim under
> subsection (a) if –
>
> (2) the claim substantially predominates over the
> claims over which the district court has original
> jurisdiction, [or]
>
> (3) the district court has dismissed all claims over

21

which it has original jurisdiction.

28 U.S.C. § 1367 (c)(2) & (3).

If the Court concludes that Plaintiff's federal claims should be dismissed, the Court should, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's city law claims and accordingly dismiss them.

## **CONCLUSION**

An Order pursuant to F.R.C.P. Rule 56 should be issued granting Defendants summary judgment and dismissing all claims as against them and for such other and for such further relief as this Court deems just and proper.


DATED:        November 8, 2013
              New York, New York

                                   Yours, etc.,
                                   HOEY, KING, EPSTEIN, PREZIOSO &
                                   MARQUEZ
                                   Attorneys for Defendants,
                                   55 Water Street, 29th Floor
                                   New York, New York 10041-2899
                                   (212) 612-4200


                          By:  /s/ Rhonda L. Epstein_____
                               Rhonda L. Epstein

22